The Vice-Chancellor.
By the thirty-eighth section of the title of the revised statutes, relative to “ Proceedings by and against Corporations,” an incorporated company shall be deemed to have surrendered its corporate rights and franchises, whenever it shall have suspended its ordinary and lawful business for one year; and it shall thereupon be adjudged to be dissolved. (2 R. S. 463.)
The ordinary business of this company, that for which it was created, was to make insurance upon vessels, goods, freight, and all marine risks and inland navigation, and to lend money on *562 bottomry and respondentia. By an amendment to its charter, the company was authorized to make fire insurances. On the 27th of May, 1845, the board of directors resolved that the company should cease to take any risks after the 31st day of that month, and directed the executive officers to cancel all policies and liquidate all outstanding liabilities as speedily as possible.
This resolution was carried into effect; and for more than a year prior to the presenting of the petition, no new policy had been issued; nor had any new risk been taken, except that two or more sums were within the year, insured in pursuance of the agreement of the company to that effect, contained in open policies, which were outstanding on the 27th of May, 1845. Within the year past, there Were Only six risks of the company outstanding ;■ all of which were contracted in 1844; and during the year, there had been no loan on bottomry or respondentia. The company had maintained the form of its corporate organization, in its president, vice-president, secretary and board of directors; but it employed no clerks or agents; it paid no salaries or office rent; and its board of directors had not been convened since the passage of the resolution, in May, 1845.
There can be no doubt that the corporation has, for more than a year, suspended its ordinary and lawful business. The argument, that there is no such suspension, as long as it takes or has standing a single risk or policy, is entirely inadmissible. A substantial relinquishment of its ordinary business, brings it within the statute. The annual election of directors, does not avoid the difficulty. (See Briggs v. Penniman, 8 Cowen, 387.)
I have no doubt, that the course, pursued by the managers of this institution, in suspending their business, has been adopted in entire good faith, with the intention of promoting the interests of the stockholders ; and that they designed to try the experiment of the novel, and, at that time popular, system of mutual insurance, without relinquishing their corporate franchises ;■ so that if the experiment should fail, they might resume the business of insurance, in their stock corporation. Nor do I believe that there Was any iktention to evade or contravene the law in *563 the transaction. But, I cannot avoid the clear conclusion, that their proceedings have subjected the corporation to a dissolution, under the 38th section of the statute before cited.
It was next contended, in their behalf, that the court could not, under that section, grant an injunction, or appoint a receiver. The chancellor, in Ward v. The Sea Insurance Company, 7 Paige, 294, declared a contrary opinion, as to the receiver 5 and I think the opinion is correct. The section, itself, is found in the article of the statutes, entitled “ Of proceedings against Corporations in Equity.” Thus, it appears, that the contemplated adjudication of dissolution, was to be made in this court. Having by the act, jurisdiction for this purpose, the usual powers and proceedings of the court, would of course apply, unless there be some restriction or exception made by the statute ; and none is to be found. On the contrary, the ninth section of the act respecting the general powers of corporations, (1 R. S. 600,) expressly recognizes the power of this court (#‘it being a court of competent authority,”) to appoint trustees, to settle the affairs of corporations, on their being dissolved; and such trustees, are in chancery, denominated receivers.
It is also urged by the petitioners, with great force of reasoning, that the 38th section of the statute first cited, which was derived from the 6th section of the act of 1825, to prevent fraudulent bankruptcies by incorporated companies, &c., stands upon the same footing in respect of a receivership, and its consequences, as does the 36th section of the same statute; and that within the principle of the case of Mann, Receiver, &c., v. Pentz, (2 Sandf. Ch. R. 257,) the 41st and subsequent sections of the statute, apply to the proceedings under section thirty-eight. As it is not necessary to decide this point on the present application, I prefer to avoid expressing an opinion upon the subject.
If there be any error in the opinion that a receiver may be ap^ pointed, under the thirty-eighth section, in connection with 1 Rev. Stat. 600 5 the petitioners next claim that they are entitled to have one under the 39th section of the same title, on the ground that this corporation has violated its charter, as well as other acts, binditig upon it.
*564 1. This is alleged of its suspension of its ordinary business. The chancellor, in the case of the Sea Insurance Company, before cited, held that this was a violation of the act of incorporation of that company; and, although there were other grounds for his decision, I understand this point to have been distinctly decided. Were it an open question, I have no doubt that his view of the law is sound and just.
Under our system of creating corporations by special acts of legislation, ostensibly for the public benefit; the judgment of the legislature is exercised upon the necessity and propriety of the corporate grant at the time and place where it is sought, and one important element in such judgment, is the extent of previous outstanding corporate franchises of the same class and character. It is obvious that no accurate knowledge on this subject would be attainable, and no judicious legislation could be expected, if corporations created by existing and former acts, were at liberty to cease transacting business and again to resume it whenever they pleased. From these considerations, and the public objects and purposes of their creation, it follows that the charters of these corporations imply and require that they shall perform the business for which they are instituted; and an entire omission to commence business, and a substantial suspension of the same after its commencement, are alike violations of the provisions of their acts of incorporation.
2. The other alleged infringements of the charter of the company, and of the laws binding upon it, consist of the use of its funds in the erection of expensive dwelling houses on vacant real estate which the company bought in on foreclosure; of a loan on the security of its own stock; of the omission, to make and file an annual report with the comptroller as required by the revised statutes, (1 R. S. 593, § 19 to 22 ;) and of its management by a committee, instead of the board of directors. My conclusion on the suspension of its ordinary business, renders it superfluous for me to examine these points of the petitioners.
The temporary injunction will be continued, and there must be a receiver of the corporate property and effects, according to the prayer of the petition.